**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Theodore A. TIRRELL, Defendant–Appellant, Cross–Appellee.**

Nos. 96–2752, 96–3031.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1997.

Decided July 15, 1997.

RIPPLE, Circuit Judge.

A jury convicted Theodore Tirrell of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). In sentencing Mr. Tirrell, the court decided not to apply 18 U.S.C. § 924(e), which contains a 15-year mandatory minimum sentence for defendants who violate § 922(g) and have three prior convictions for a violent felony, on the ground that Mr. Tirrell's prior Michigan conviction for attempted unarmed robbery did not qualify as a violent felony under § 924(e). We affirm Mr. Tirrell's conviction but reverse the district court's § 924(e) sentencing determination.

## I

## BACKGROUND

On July 25, 1992, Robert Johnson was accosted by three African–American males in Rock Island. He and another victim, Willie Williams, described to the police the suspects and the brown Chrysler New Yorker in which the suspects had left. Williams also stated that Mr. Tirrell had pulled a gun on him during the incident and demanded to know what was in Williams' pockets. Williams rode with the police and located the Chrysler at a motel. After midnight, the police set up surveillance of the motel. Officer Robert Schroeder parked in an alley across the street, and Officer Mark Poulos watched the back of the motel.

Officer Schroeder observed five African–American males leave one of the motel rooms. One of the men matched a description of one of Johnson's attackers. He was an African–American male wearing light-colored clothing and was stocky or heavy. The five men got into a blue Pontiac Grand Am, which was parked twenty feet from the brown Chrysler, and drove away. The police made a traffic stop of the car.[1]

Mr. Tirrell was seated in the right rear seat of the car. The police ordered all the

Jeffrey B. Lang (argued), Office of the United States Attorney, Rock Island, IL, for Plaintiff–Appellee, Cross–Appellant.

Gregory J. McHugh (argued), Appleton & McHugh, Aledo, IL, for Defendant–Appellant, Cross–Appellee.

Before EASTERBROOK, RIPPLE and MANION, Circuit Judges.

---

1. Officer Schroeder stated that, during police roll call at the beginning of his shift on July 25, he had been told that a blue Pontiac Grand Am with a particular license plate had been used in a robbery reported the night before. During the suppression hearing, Officer Schroeder testified that, after he got behind the Pontiac leaving the motel, he could see the license plate clearly and determined that the Pontiac was the vehicle involved in the previous night's robbery. At trial, however, the officer stated that he could not see the license plate until after the car was stopped.

men to show their hands. All the men did so except for the man seated in the middle of the rear seat, Terrance Owens, who kept dropping his right hand. When the police approached the car, they viewed a gun on the seat in between Owens and Mr. Tirrell. Four other guns were found in the car: one under the driver's seat by the driver, one under the driver's seat by the left rear seat passenger, one under the passenger seat by the front seat passenger, and one in the trunk. After the suspects were removed from the car, a gun—apparently the one that had been in between Owens and Mr. Tirrell—was found on the right rear floorboard. In total, five firearms were found in the Pontiac.

Based on these events, Mr. Tirrell was tried in state court for the unlawful use of firearms by a convicted felon, armed robbery and armed violence. He was convicted of the unlawful use of firearms offense, but was acquitted of armed robbery and armed violence. He was sentenced to 30 months' probation in May 1993. In early 1995, he was found to have violated his probation and was sentenced to 8 years' imprisonment.

In July 1993, the Rock Island County State's Attorney requested that Mr. Tirrell be federally prosecuted. No action was taken on the request. The request was renewed in April 1995. At that time, the United States Department of Justice agreed to re-prosecute Mr. Tirrell for the firearms offense under § 922(g). The jury found Mr. Tirrell guilty of possessing all five of the firearms found in the Pontiac. The district court found that sufficient evidence existed to convict Mr. Tirrell of possessing only one firearm. Mr. Tirrell was sentenced to 53 months' imprisonment to be served concurrently with the state sentence.

## II

## DISCUSSION

A. *Mr. Tirrell's Direct Appeal, No. 96–2752*

1. Reasonable Suspicion

Mr. Tirrell's first submission is that the officers lacked reasonable suspicion to stop the Pontiac and its occupants on the night he

was arrested. *See Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (holding that "stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief"). The investigatory stop in this case was reasonable if there was "at least articulable and reasonable suspicion" that the occupants were "subject to seizure for violation of law." *Id.* at 663, 99 S.Ct. at 1401; *see United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989). We look to "the totality of the circumstances" and apply common sense to determine whether the officers' articulated facts provide "a particularized and objective basis for suspecting the particular person[s] stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *see United States v. Jerez,* 108 F.3d 684, 693 (7th Cir.1997). We review de novo whether the officers' articulated facts would raise a reasonable suspicion of criminal wrongdoing. *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

■ Although this issue is a close one, the totality of facts here adds up to a particularized basis for the stop. The blue Pontiac matched the description of an automobile that had been involved in a robbery on the night prior to the stop. The Pontiac was parked two or three spaces away from the brown Chrysler New Yorker that Willie Williams had identified as the vehicle that had been driven by the three African–American males who had accosted him. Both cars were parked close to the motel room door exited by Mr. Tirrell and his associates. There was some evidence that one of the men may have walked over to the brown Chrysler before entering the blue Pontiac. *See* Tr.II at 5–6. The suspects exited the motel room at 1:30 in the morning, shortly after the officers had set up surveillance. Of the five African–American males that Officer Schroeder saw at that time, at least one of them matched the general description (race, sex, build and clothing) that had been given

to the officers by Williams and Johnson. He was wearing light clothing, top and bottom, and was heavyset. We hold that these facts support a reasonable suspicion that the individuals stopped had been involved in an armed robbery. It was therefore reasonable for the officers to stop the individuals to ascertain who they were.

We think that this was a close issue for two reasons. First, the blue Pontiac was suspected in a robbery different from the one involving the brown Chrysler. Nevertheless, the totality of the facts in this case produces a common-sense linking of the two cars and the suspects. Second, we are troubled by the fact that Officer Schroeder changed his testimony between the suppression hearing and the trial.[2] On reconsideration of its suppression ruling, the district court was persuaded nonetheless that Officer Schroeder had recognized the significance of the four-door Grand Am before the stop, even if he had not seen the car's plates. Assessing the total picture, we must conclude the officers had an objective basis for suspecting these particular individuals.

### 2. Jury Instructions

#### a.

Mr. Tirrell maintains that the district court erred in giving a joint possession instruction in addition to a constructive possession instruction. The court instructed the jury as follows:

> Possession may be either actual or constructive. Constructive possession is the ability to control an object.
>
> Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.

R.118 at 22. Mr. Tirrell confesses that this instruction was proper. He maintains, however, that reversible error arose when the court gave the following instruction in addition:

Constructive possession may be either sole or joint. The fact that one person had access to a firearm does not negate the possibility of its possession by another person also. In other words, possession need not be exclusive but may be joint.

R.118 at 23. Mr. Tirrell asserts that it was improper for the district court to extend the joint custody concept to a situation involving a vehicle; he insists that joint possession is a concept that should be limited to cases in which multiple individuals possess weapons in a house. Mr. Tirrell perceives an additional problem with the instruction; in his view, the instructions would permit a jury to find no actual or constructive possession but still to convict on a joint ownership theory.

▮ On appeal, "we will not overturn the use of a jury instruction if it fairly and adequately advises the jury of the law in this Circuit." *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir.1997). Here, the instructions accurately stated the law of possession. This court recently explained in *United States v. Kitchen*, 57 F.3d 516 (7th Cir.1995), that "[p]ossession may be either actual or constructive" and that " '[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.' " *Id.* at 520 (quoting *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990)). In Mr. Tirrell's case, the wording of the court's instructions mirrored the language we set forth in *Kitchen* and *Garrett*.

▮ We said further in *Kitchen* that "[c]onstructive possession may be either sole or joint." 57 F.3d at 521 (citing *Garrett*, 903 F.2d at 1110 (possession "need not be exclusive but may be joint")). In *Kitchen* we concluded that the fact that another defendant had access to the firearms at issue "fail[ed] to negate the inference that Kitchen did as well." *Id.* The district court in this

---

[2] Officer Schroeder was, at best, forgetful or careless and, at worst, perjurious. At the hearing, he testified that he recognized the license plate of the Pontiac before the stop as he was following the vehicle. At trial, on the other hand, he said that he could not read the licence plate until after the vehicle was stopped.

case properly instructed the jury on joint possession in words that were practically verbatim to those we used in *Kitchen* and *Garrett*. Moreover, contrary to Mr. Tirrell's suggestion, the jury could not have found simultaneously that he did not constructively possess a firearm but that he did jointly possess one. The given instruction was clear: "Constructive possession may be either sole or joint." R.118 at 23. The jury, therefore, could not have found joint possession without also determining that constructive possession had occurred.

■ Nor is there any merit to Mr. Tirrell's claim that joint possession cannot occur in an automobile. We already have held otherwise. *See United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). Joint possession simply recognizes that more than one individual can exercise control over a firearm. The concept does not require that the individuals and the firearms be in any certain locale. Indeed, in close quarters such as a car, a jury likely would have an easier time concluding that multiple individuals exercised control over a particular weapon. A defendant is of course free to argue to a jury that the location of the firearms in relation to other individuals negates the inference that he knowingly had the power and the intention to exercise control over the objects. A jury, however, certainly is not prohibited, as a matter of law, from finding joint possession because that location was an automobile. The government understandably proposed the joint possession instruction to counter Mr. Tirrell's theory of defense that his four cohorts had each been responsible for one of the four weapons in the passenger compartment and that therefore Mr. Tirrell had possessed none of them. The government was entitled to have the jury know that the law permits a finding that more than one individual possessed a single gun.

### b.

■ The jury was instructed that the indictment charged that Mr. Tirrell had committed the firearms offense "on or about" July 26, 1992. The instruction told the jury that the evidence had to show that the offense was committed on a date reasonably near the date charged. Mr. Tirrell makes a truncated argument that this instruction was improper because it allowed the jury to consider whether Mr. Tirrell possessed a firearm before midnight on July 25, 1992 during the alleged encounter with Williams and Johnson. Mr. Tirrell notes that, during closing argument, his counsel focused on whether he had possessed the firearms in the Pontiac at the time of the stop on July 26.

The "on or about" instruction was proper in this case. The indictment charged that Mr. Tirrell possessed a firearm "[o]n or about July 26, 1992." R.1. The government introduced evidence of Mr. Tirrell's possessing a weapon before midnight on July 25 during the hold-up of Williams and Johnson. Mr. Tirrell was on notice that the government intended to use the events of July 25 as evidence of the crime charged. When Mr. Tirrell moved in a motion in limine to exclude evidence of the July 25 incident, the government noted that the indictment charged a crime on or about July 26 and that the July 25 incident bore directly on the offense charged. The court agreed. The same discussion occurred during a jury instruction conference. In closing argument, the government repeatedly referred to events occurring "on or about" July 26 and to events occurring on July 25. Mr. Tirrell did not object to these references. The court's instruction used the terms of the indictment and was not error in this case.

### 3. Double Jeopardy and Collateral Estoppel

■ Mr. Tirrell's double jeopardy contention is that the United States should not have been able to try him under § 922(g) since he was convicted of firearms possession in state court. Under the dual sovereignty doctrine, however, successive federal and state prosecutions for the same offense are permitted; the Double Jeopardy Clause is inapplicable when two different sovereigns prosecute the same defendant. *Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Although

the doctrine has received some judicial and scholarly criticism over the years, see, e.g., *United States v. All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 496–99 (2d Cir. 1995) (separate opinion of Calabresi, J.); Akhil Reed Amar & Jonathan L. Marcus, "Double Jeopardy Law After Rodney King," 95 Colum. L.Rev. 1 (1995), the Supreme Court has recently reiterated that "[s]uccessive state and federal prosecutions do not violate the Double Jeopardy Clause," *Koon v. United States,* — U.S. —, —, 116 S.Ct. 2035, 2053, 135 L.Ed.2d 392 (1996) (citing *Heath* and noting "the dual responsibilities of citizenship in our federal system"). Here, Mr. Tirrell's state conviction for unlawful use of a weapon by a felon did not preclude his federal prosecution, even if the two offenses amount to the same offense under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and its progeny.

█ Recognizing the hurdle he faces, Mr. Tirrell attempts to avail himself of the so-called *Bartkus* exception to the dual sovereignty doctrine. *See Bartkus v. Illinois,* 359 U.S. 121, 122–24, 79 S.Ct. 676, 677–79, 3 L.Ed.2d 684 (1959). He says that the United States prosecuted him because of the state's dissatisfaction with the punishment he received in the state tribunal (30 months' probation) and further claims that evidence of such a motivation would suffice to trigger the *Bartkus* exception. In *Bartkus* the Supreme Court, in dicta, suggested that it would be impermissible for one sovereign to use the other as a "tool" to bring a successive prosecution, thereby making the second prosecution a "sham and a cover" for the first prosecution. *Id.; see All Assets,* 66 F.3d at 494–96 (discussing *Bartkus* exception). This circuit has expressed doubts about "whether *Bartkus* truly meant to create such an exception, and we have uniformly rejected such claims." *United States v. Brocksmith,* 991 F.2d 1363, 1366 (7th Cir.), *cert. denied,* 510 U.S. 999, 114 S.Ct. 569, 126 L.Ed.2d 468 (1993). At any rate, the exception, if it exists at all, is a very narrow one. *Id.* Even significant cooperation between federal and state agencies is not enough to make the second prosecution a "sham." *Bartkus,* 359 U.S. at 123, 79 S.Ct. at 678; *United States v. Rector,* 111 F.3d 503, 507 (7th Cir.1997); *Brocksmith,* 991

F.2d at 1366–67; *All Assets,* 66 F.3d at 495. Here, no evidence suggests that the federal government was acting as a mere puppet of the state. The state merely requested the United States to prosecute Mr. Tirrell a second time.

█ The dual sovereignty doctrine likewise disposes of Mr. Tirrell's collateral estoppel claim. Mr. Tirrell maintains that collateral estoppel should have prevented the introduction of Williams' testimony that Mr. Tirrell pulled a gun on him just before midnight on July 25 because he had been acquitted of armed robbery and armed violence for this alleged conduct in state court. The district court compounded the problem, he insists, by not allowing him to inform the jury that he had been acquitted, as the defendant had been allowed to do in *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). It is true that "[t]he Double Jeopardy Clause has been held to embrace principles of issue preclusion, such that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Brocksmith,* 991 F.2d at 1367 (quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)). However, "[c]ollateral estoppel cannot apply here because it holds only between the same parties, whereas the United States was not represented in the prior case." *Id.* It would be anomalous indeed if a sovereign were allowed the greater power of reprosecuting individuals for offenses for which they had been acquitted but were denied the lesser power of proving the underlying facts of such offenses.

█ Nor was the district court required to inform the jury that Mr. Tirrell had been acquitted of armed robbery and armed violence in the state proceeding. The trial court in *Dowling, supra,* did allow into evidence that the defendant had been acquitted. The Supreme Court's holding in *Dowling,* however, does not require that the jury be told of an acquittal. The district court's decision not to allow mention of Mr. Tirrell's acquittal is therefore an evidentiary ruling

that we review for an abuse of discretion. *See United States v. Jones*, 808 F.2d 561, 566–67 (7th Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987). The decision to exclude the evidence of acquittal was not error. *See id.* "In general, evidence of a prior acquittal is only relevant in determining whether the prosecution is barred by double jeopardy or collateral estoppel[,]" *id.* at 566, and we have already determined that Mr. Tirrell's prior acquittals had no double jeopardy or collateral estoppel ramifications. In any event, we "afford substantial deference to a district court's decision to exclude" evidence of an acquittal and will reverse such a decision only for an abuse of discretion. *Id.* Here, the court decided Mr. Tirrell's prior acquittals were irrelevant. It excluded all references to the prior prosecution and did not allow the government to inform the jury that Mr. Tirrell had been convicted of the state firearms charge. We shall not disturb the court's sound exercise of discretion on this issue.

### 4. Other Matters

Mr. Tirrell asserts that the prosecutor made inappropriate remarks and used improper tactics in closing argument. He also alleges that the court erred in admitting certain photographs and a diagram into evidence. Both sets of claims merit little discussion.

#### a.

■ Mr. Tirrell says that, during closing argument, the government improperly implied that Mr. Tirrell was involved in a conspiracy. During closing argument, the prosecutor made several references to the effect that Mr. Tirrell and the other passengers in the automobile were acting together or in concert. Mr. Tirrell was not indicted for conspiracy, he notes, and the prosecutor's argument could have led the jury improperly to convict him for vicariously possessing the firearms as part of a conspiracy. Yet the prosecutor did not suggest that Mr. Tirrell could be convicted of conspiracy, and the district court did not instruct the jury on the

elements or principles of conspiracy. The prosecutor's remarks properly went to the government's theory that Mr. Tirrell jointly possessed the firearms in the vehicle. These statements were in direct response to Mr. Tirrell's defense that he could not have possessed any one of the four weapons because each of the four was being possessed by one of the other passengers in the car.

Mr. Tirrell next asserts that it was unfair for the prosecutor to hold the police report, which was highlighted and contained Mr. Tirrell's disputed confession, during closing argument. There is absolutely no evidence that the prosecutor referred to the report in any improper fashion or allowed the jury to read it.[3]

Mr. Tirrell's final submission with respect to closing argument is that the prosecutor untruthfully stated that the driver of the car had admitted that he, along with Mr. Tirrell and the gang, had stopped at a house on July 25 to obtain guns. The prosecutor, however, was properly discussing an inference that could reasonably be drawn from the driver's testimony. Additionally, immediately after Mr. Tirrell's objection to this portion of the closing argument, the court instructed the jury that it should disregard any statements made by counsel not based on the evidence. Under any view, the prosecutor's remarks and conduct during closing argument did not result, by any stretch of imagination, in Mr. Tirrell's receiving an unfair trial. Accordingly, they provide no basis whatsoever for reversing Mr. Tirrell's conviction. *See United States v. Velez*, 46 F.3d 688, 691–92 (7th Cir.1995).

#### b.

■ Mr. Tirrell challenges the district court's decision to allow into evidence certain photographs. Two are close-up daytime pictures of the motel's empty parking lot. Mr. Tirrell says that the photographs are misleading because, on the evening in question, the police were a distance from the parking lot, it was nighttime, and the lot was full. Another is a picture of the place of the traffic

---

**3.** Also, during cross-examination of the officer who wrote the report, Mr. Tirrell's counsel referred to his client's statements and showed the officer the report.

stop. Mr. Tirrell says that it is misleading because it was taken in the middle of winter at daytime, whereas the stop occurred in July at nighttime. Two more are pictures of the interior of the car with the firearms on the seats. In actuality, Mr. Tirrell notes, the guns were under the seats when the car was pulled over. He further asserts that a diagram depicting the guns in the car was misleading.

■■■■■ We review the district court's decision to admit these photographs and the diagram for an abuse of discretion. *United States v. Dombrowski*, 877 F.2d 520, 524 (7th Cir.1989), *cert. denied*, 496 U.S. 907, 110 S.Ct. 2592, 110 L.Ed.2d 272 (1990). We fail to see how Mr. Tirrell could have been prejudiced by the photographs of the parking lot and the stop location. The appearance of those locales on the night in question was irrelevant to Mr. Tirrell's guilt or to any other issue that had to be resolved by the jury. The exhibits were merely introduced as background material. Moreover, the jury was informed of the differences between the way those scenes appeared on the relevant night and the depiction of them in the photographs. As for the picture showing the guns on the seat, Officer Schroeder and the district court clearly explained to the jury that the guns were placed on the seat for the photograph. The diagram that showed the guns' positions was similarly explained to the jury, and the officer indicated which guns were found under the seats. The district court did not abuse its discretion in admitting these exhibits.

B. *The Government's Cross–Appeal, No. 96–3031*

Prior to sentencing, the government notified the court that Mr. Tirrell had a 1972 unarmed robbery conviction, a 1974 attempted unarmed robbery conviction and a 1979 murder conviction. The district court allowed Mr. Tirrell to testify with respect to the facts underlying his 1974 attempted unarmed robbery conviction, but eventually concluded that it had to look to the elements of the crime, not to the facts underlying the conviction. The court held that the 1974 Michigan conviction did not qualify as a violent felony under § 924(e). Because that ruling left Mr. Tirrell with only two prior violent felonies, he did not qualify as an armed career offender under § 924(e) and was not sentenced to that section's mandatory minimum 15–year sentence.

Title 18 U.S.C. § 924(e)(1) provides that a person convicted under § 922(g) shall be imprisoned not less than 15 years if that person has three previous convictions for a "violent felony." "Violent felony" is defined in § 924 as any crime punishable by more than a year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

18 U.S.C. § 924(e)(2)(B).

■■■■■ In *Taylor v. United States*, 495 U.S. 575, 588–89, 600–02, 110 S.Ct. 2143, 2152–53, 2159–60, 109 L.Ed.2d 607 (1990), the Supreme Court held that a court must look to the statutory elements of a crime to determine if the crime qualifies as a "violent felony" under § 924. The question in this case, therefore, is whether unarmed robbery in Michigan either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) "presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Unarmed robbery is defined in the Michigan Penal Code:

> 750.530 Unarmed robbery
>
> Sec. 530. ROBBERY UNARMED—Any person who shall, *by force and violence, or by assault or putting in fear*, feloniously rob, steal and take from the person of another, or in his presence, any money or other property . . ., such robber not being armed with a dangerous weapon, shall be guilty of a felony. . . .

Mich. Comp. Laws § 750.530 (emphasis added). The elements of unarmed robbery in Michigan are "(1) a felonious taking of property from another, (2) by force or violence or assault or putting in fear, and (3) being unarmed." *People v. Johnson*, 206 Mich.App.

122, 520 N.W.2d 672, 674 (1994). The elements of attempted unarmed robbery are "(1) an attempted felonious taking of property from the person of another, (2) by force and violence or by assault or by putting in fear, and (3) defendant being unarmed." *People v. Chandler*, 201 Mich.App. 611, 506 N.W.2d 882, 884 (1993).

### 1.

■ We first consider whether Michigan's attempted unarmed robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Michigan statute, of course, does not use those precise terms. Rather, it requires the defendant to have attempted a taking "by force and violence or by assault or by putting in fear." *Chandler*, 506 N.W.2d at 884 (emphasis added). The statute is disjunctive in this regard; the offense may be committed either by force and violence, by assault or by putting in fear. *People v. Berry*, 112 Mich. App. 79, 315 N.W.2d 199, 201 (1981). If a defendant commits the offense either by force and violence or by assault, we believe that he has, in the words of § 924(e), committed a crime by "use of physical force against the person of another." *See People v. Bryant*, 80 Mich.App. 428, 264 N.W.2d 13, 16 (1978) (defining assault).

Mr. Tirrell's only argument, therefore, is that the last disjunctive phrase "putting in fear" does not necessarily have to involve "the use, attempted use, or threatened use of physical force." Michigan case law, though, points in the other direction. *See People v. Kruper*, 340 Mich. 114, 64 N.W.2d 629, 632 (1954) (noting that a robbery can occur "regardless of how slight the act of force or the cause creating fear may be, provided, in the light of the circumstances, the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand"); *People v. Hearn*, 159 Mich.App. 275, 406 N.W.2d 211, 214 (1987) (quoting *Kruper* and

affirming conviction because "the victim held a reasonable belief that she might suffer harm if she did not comply with defendant's request"); *People v. Laker*, 7 Mich.App. 425, 151 N.W.2d 881, 883–84 (1967) (quoting *Kruper*).

Read literally, these cases might be interpreted as not excluding the possibility that a conviction for unarmed robbery could be predicated on a threat to injure, although not by use of physical force against the person of another. We note that there are some cases, although predominately of ancient vintage and criticized in many quarters, that would sustain a robbery conviction on such a ground.[4] This minority approach has found no root in Michigan. *See People v. Krist*, 97 Mich.App. 669, 296 N.W.2d 139, 143 (1980) (noting that "unarmed robbery in Michigan encompasses a narrower set of circumstances. Larceny by fear of immediate bodily harm or violence to the person will be prosecuted as robbery; the unlawful obtaining of property by threats of a different nature ... will ordinarily constitute a different offense such as extortion."). Therefore, under the Michigan statute, putting in fear constitutes threatening the use of physical force under § 924(e)(2)(B)(i). Stated another way, under Michigan law, the element of putting in fear means threatening the use of physical force against the person of another.

■ The fact that one of the Michigan offenses was for *attempted* unarmed robbery does not change the outcome.[5] Under Michigan law, the "attempt" factor is added to the first element of the crime, not to the second. *See People v. Chandler*, 201 Mich.App. 611, 506 N.W.2d 882, 884 (1993); *cf. United States v. Fish*, 928 F.2d 185, 188 (6th Cir.) (attempted breaking and entering is a violent felony for the purposes of enhancement under § 924(e)), *cert. denied*, 502 U.S. 834, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991). Attempted unarmed robbery in Michigan still requires proof of the second element of force and

---

4. *See* 67 Am.Jur.2d *Robbery* § 26 (1985).

5. Accordingly, we pause here to make clear that both unarmed robbery and attempted unarmed robbery under Michigan law are violent felonies under § 924(e). The district court focused on Mr. Tirrell's 1974 attempted unarmed robbery conviction at the sentencing hearing. However,

the court's reasoning, if correct, would call into question whether Mr. Tirrell's 1972 conviction for unarmed robbery could be used to enhance his sentence under § 924(e). Our holding today is that both Michigan offenses-unarmed robbery and attempted unarmed robbery-constitute violent felonies under § 924(e).

violence, assault or putting in fear. We hold that a conviction for the Michigan offense of attempted unarmed robbery qualifies as a violent felony under § 924(e)(2)(B)(i). *Cf. United States v. Alvarez*, 972 F.2d 1000, 1006 (9th Cir.1992) (holding that convictions for unarmed robbery are properly considered under § 924(e)(2)(B)), *cert. denied*, 507 U.S. 977, 113 S.Ct. 1427, 122 L.Ed.2d 795 (1993).

### 2.

██ We believe that an independent ground exists for concluding that Mr. Tirrell's Michigan offense is a violent felony under § 924(e). The offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

As we noted recently in *United States v. Fife*, 81 F.3d 62 (7th Cir.1996), the "question of whether a crime is a violent felony under the 'otherwise' clause of § 924(e) is not answered by considering whether commission of the crime necessarily creates a risk of violent confrontation." *Id.* at 64. Rather, "the benchmark should be the possibility of violent confrontation, not whether one can postulate a nonconfrontational hypothetical scenario." *United States v. Davis*, 16 F.3d 212, 217 (7th Cir.), *cert. denied*, 513 U.S. 945, 115 S.Ct. 354, 130 L.Ed.2d 309 (1994). In our view, unarmed robbery under Michigan law certainly involves such a risk. We believe that it is fair to say that, if a robbery is committed or attempted "by force and violence, or by assault or putting in fear," a serious potential risk of physical injury to another undoubtedly arises. This is manifest if the attempt is achieved by force and violence or by assault. Yet, even when the attempt is carried out by putting in fear, a serious risk arises. The Supreme Court explained in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), that Congress included burglary in § 924(e) as an enumerated offense "because of its inherent potential for harm to persons." *Id.* at 588, 110 S.Ct. at 2153. "The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Id.* The Court noted that "the offender's own awareness of this

possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape." *Id.* Similarly, when an offender attempts to take property from another or in another's presence by force and violence, by assault or by putting that person in fear, "the possibility of a violent confrontation between the offender and" the victim is created. *Id.* In such a situation, it is likewise common for the offender to know of this possibility and to be "prepared to use violence if necessary to carry out his plans." *Id.* Indeed, unarmed robbery in some ways presents a greater risk of violent confrontation than burglary insofar as the former offense always occurs in the victim's presence. We therefore conclude that unarmed robbery and attempted unarmed robbery under Michigan law qualify as violent felonies under § 924(e)(2)(B)(ii).

### CONCLUSION

We affirm Mr. Tirrell's conviction (No. 96–2752). We reverse the district court's sentencing determination in the government's cross-appeal, No. 96–3031, and remand the case to the district court for resentencing.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR SENTENCING.