142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Christopher L. HAMILTON, Defendant-Appellant.
 No. 97-1971.
 United States Court of Appeals,
Seventh Circuit.
 .
Argued April 10, 1998.
Decided April 21, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 96 CR 20044 Harold A. Baker, Judge.
 Before Hon. RICHARD A. POSNER, Hon. WILLIAM J. BAUER, Hon. MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 
 1
 On December 13, 1996, defendant Christopher Hamilton ("Hamilton") was convicted by a jury of possessing with the intent to sell crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and was subsequently sentenced to life imprisonment. Hamilton now challenges his conviction, principally arguing that the government failed to prove beyond a reasonable doubt that he possessed crack and that the district court improperly instructed the jury on the concept of constructive possession. We affirm.
 
 
 2
 In brief, Hamilton's story is as follows. In late April or early May of 1996, Shikira Womack ("Womack") lived at 204 East Garwood in Champaign, Illinois, with her mother and child. Womack's mother was addicted to crack cocaine, and Hamilton used marijuana frequently. At the time, Womack was working at a Steak and Shake restaurant, earning approximately $260 every two weeks, and also was pregnant. Hamilton approached Womack at her home and offered to pay her $100 per week if she would let him store crack in her home. She agreed, and Hamilton placed a Chicago Bulls duffel bag containing crack on the floor of one of the bedrooms in Womack's house. Hamilton periodically retrieved crack from the bag, replacing it on other occasions with crack he brought to Womack's house in a shoebox.
 
 
 3
 On July 12, 1996, Hamilton came to Womack's house and proceeded to the bedroom, where Womack observed Hamilton cutting, weighing, and bagging crack for sale. Approximately five minutes after Hamilton had arrived, Champaign police officers came to Womack's house to execute a search warrant. Upon entering the house, an officer went to Womack's bedroom, where he found Hamilton lying on a mattress which also held a bag with 10 grams of crack, razors, and scissors. On the floor near Hamilton was a digital scale, and the Bulls duffel bag was found in the bedroom closet. A search of the duffel bag revealed a box of sandwich bags and five plastic bags containing approximately 230 grams of crack cocaine.
 
 
 4
 Hamilton was arrested and was charged in the Central District of Illinois with possession with intent to sell crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and was tried before a jury on December 12-13, 1996. During trial, the government proceeded, in part, on a theory of constructive possession, and Judge Harold Baker instructed the jury as to the definition of constructive possession. During its deliberations, the jury requested clarification of part of that definition, and such clarification was provided by the court. Hamilton was convicted, and on April 18, 1997, was sentenced to life imprisonment pursuant to the "three strikes" provision of 21 U.S.C. § 841(b)(1)(A). Judgment was entered the same day, and Hamilton filed a timely notice of appeal. This case being properly before us, we turn to Hamilton's arguments on appeal.
 
 
 5
 First, we deal with Hamilton's contention that the district court improperly instructed the jury on the concept of constructive possession. The challenged instruction given at trial is as follows:
 
 
 6
 When I use the words "possessed or possession" in these instructions, I mean possession in either an actual or constructive way. Actual possession means that a defendant knowingly had a personal, manual, or physical possession of something. Constructive possession means that although the thing may be in the physical possession of another person, if a defendant has knowledge of the presence of the thing plus the power of exercising control over it, that would be sufficient to constitute possession.
 
 
 7
 See Trial Transcript at 199. During the course of its deliberations, the jury sought a clarification of the parameters of the "power of exercising control over it" portion of the instruction, to which the district court responded: "Words should be given their ordinary meaning. 'Power' as used in the instructions means authority, capacity or ability." See Record Docs. 29 and 30. Presently, Hamilton objects that this instruction, and the court's answer to the jury's question, were slanted and argumentative in favor of the prosecution and directed the jury to a guilty verdict.
 
 
 8
 We review a trial court's instructions to the jury with great deference, and will not disturb instructions "which are accurate statements of the law and which are supported by the record ...." United States v. Vang, 128 F.3d 1065, 1069 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1107, 140 L.Ed.2d160 (1998) (quoting Doe By and Through G.S. v. Johnson, 52 F.3d 1448, 1456 (7th Cir.1995)). Even if we find that an instruction is erroneous, we will only reverse a conviction if "the jury's comprehension of the issues is so misguided that it prejudiced the complaining party." Id. (citing United States v. Smith, 103 F.3d 600, 606 (7th Cir.1996)). In our review, we do not place the challenged instruction in isolation, but rather view all of the instructions given as a whole. United States v. Jackson, 51 F.3d 646, 653 (7th Cir.1995).
 
 
 9
 In this circuit, "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Tirrell, 120 F.3d 670, 675 (7th Cir.1997) (quoting United States v. Kitchen, 57 F.3d 516, 520 (7th Cir.1995) (other citations omitted)). From the very limited and underdeveloped discussion of this issue in his brief, we glean that Hamilton's argument is that the instruction is "slanted and argumentative in favor of the prosecution" because it did not correctly represent the concept of constructive possession by failing to include that the evidence must "sufficiently demonstrate[ ] ownership, dominion, or control." See Appellant's Brief at 12. Our reading of the instruction, however, shows that it clearly and accurately represents the essential elements of constructive possession. It stated that constructive possession exists when another person has physical control of an object but the defendant knows of its presence and has the power to exercise control over it; this definition, while not a verbatim copy of the one we approved in Tirrell, sets forth the same essential elements. Taking the instruction as given by the district court in the context of all the other instructions given at trial, we cannot find that it is an inaccurate statement of the law, and it was therefore not erroneous. In any event, Hamilton has not demonstrated that, even if the instruction were erroneous, it prejudiced the outcome of his trial; indeed, he has not even attempted to do so.
 
 
 10
 With regard to Hamilton's objection to the court's defining "power" for the jury, Hamilton presents no cognizable basis from which we can find an error. Hamilton has cited no cases or law to support his argument that the district court's statement to the jury was erroneous, and we deem this argument waived on appeal. See FED.R.APP.P.28(a)(6) (briefs must contain "citations to the authorities, statutes, and parts of the record relied on"); United States v. Mason, 974 F.2d 897, 901 (7th Cir.1992) (we need not address arguments which are not supported by case law or by facts in the record).
 
 
 11
 Hamilton next argues that his conviction should be overturned because the government failed to sufficiently prove that he possessed crack. A defendant challenging the sufficiency of the evidence at trial faces a "nearly insurmountable hurdle." United States v. Moore, 115 F.3d 1348, 1363 (7th Cir.1997) (citations omitted). In examining Hamilton's claim, we consider the evidence in the light most favorable to the government, defer to the credibility determinations of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could have found guilt beyond a reasonable doubt.
 
 
 12
 To establish that a defendant possessed crack with the intent to distribute, the prosecution must prove that the defendant: 1) knowingly and intentionally possessed crack; 2) possessed crack with the intent to distribute it; and 3) knew that crack was a controlled substance. United States v. Magana, 118 F.3d 1173, 1199 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1104, 140 L.Ed.2d158 (1998). Hamilton does not challenge elements 2) or 3), but merely alleges that the government failed to prove that he possessed the crack in the first place. As we noted above, the government pursued its case under a theory of constructive possession, and therefore needed to prove beyond a reasonable doubt that Hamilton "knowingly ha[d] the power and the intention at a given time to exercise dominion and control over [crack], either directly or through others ." Tirell, 120 F.3d at 675. A brief review of the evidence presented at trial, taken in a light most favorable to the government, shows that a rational jury could have found that Hamilton did indeed "possess" crack.
 
 
 13
 At trial, Champaign police officer Tom Walker testified that he recovered, from the bedroom in which Hamilton was found, a plastic bag containing 10.1 grams of crack,[1] various razors and razor blades, and a digital scale. In a closet in that room, police found a Chicago Bulls bag containing sandwich baggies and five bags of crack totaling 230 grams. John Bunting, a forensic scientist at the Illinois State Police Crime Lab, testified that he examined a fingerprint contained on one of the bags of crack and found that it matched that of Hamilton's left index finger. In addition, Shikira Womack, a resident of the house in which Hamilton was arrested, testified that she had agreed to let Hamilton store crack at her house in exchange for $100 per week at about the end of April or beginning of May, 1996.[2] At that time, Hamilton brought a red and black Chicago Bulls gym bag into her house and placed it in her bedroom closet (the place where the police later located it). On several occasions, Womack observed Hamilton bringing more crack into the house, transferring it from a shoebox to the Bull's bag. Also on several occasions, including on the day he was arrested, Womack saw Hamilton retrieve crack from the Bulls bag. Womack also testified that immediately before the police arrived at her house on July 12, 1996, she had been in the bedroom with Hamilton and had seen him bagging up crack in preparation for sale--cutting it up with razor blades, weighing it on the scale, and placing it in plastic baggies. Despite Hamilton's argument to the contrary, this evidence, among much else, overwhelmingly establishes that he had power and dominion over the crack. Hamilton's contentions that the government produced insufficient evidence are therefore without merit, and we will not disturb his conviction.
 
 
 14
 Hamilton also presents two other arguments which can be disposed of in short order. First, he argues that the imposition of a sentence of life imprisonment violates the Equal Protection Clause because the government did not offer him a chance to plea bargain in exchange for assistance in capturing other Champaign-area hoodlums. This argument must fail for several reasons. First, as the government points out in its brief, Hamilton cited no authority to support his argument and has waived it. FED.R.APP.P.28(a)(6), Mason, 974 F.2d at 901. Second, there is no constitutional right to a plea bargain. Weatherford v. Bursey, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Hamilton also argues that a comment made by the trial court, in the presence of the jury, prejudiced his defense. This argument, too, is not supported by citation to any caselaw, and we decline to consider it here.
 
 
 15
 Since we find that ample evidence supports Hamilton's conviction and that no error was otherwise committed, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 John Martin, a forensic scientist with the Illinois State Police, testified that substances found in the room with Hamilton tested positive for the presence of cocaine base or crack
 
 
 [2]
 According to the record, Hamilton neglected to pay Womack the money he had promised her