USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 97-1927 UNITED STATES OF AMERICA, Appellee, v. STUART L. SMITH, Defendant, Appellant. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] Before Lynch, Circuit Judge, Coffin and Bownes, Senior Circuit Judges.   Theodore A. Barone with whom William F. Sullivan was on brieffor appellant. F. Mark Terison, Assistant U.S. Attorney, with whom Jay P.McCloskey, United States Attorney, and Jonathan A. Toof, AssistantU.S. Attorney, were on brief for appellee.June 10, 1998   COFFIN, Senior Circuit Judge. A three-count indictment charged Stuart L. Smith with drug conspiracy, criminal forfeitureon the drug count, and tax conspiracy. After severance of the taxconspiracy charge, Smith was acquitted of drug conspiracy andtherefore forfeited no property. Smith was then tried for taxconspiracy, i.e., conspiracy to defraud the Internal RevenueService (IRS). Evidence of drug trafficking was admitted in thetax conspiracy trial to demonstrate receipt of revenue that was notreported to the IRS. Smith was convicted and now appeals. Heargues that the district court erred in refusing to inform the juryof his acquittal on the drug conspiracy charge and in barring hiscross-examination of prosecution witnesses on their knowledge ofhis acquittal. Finally, Smith contends that the district courtshould have instructed the jury that failure to file tax returnswas an insufficient basis upon which to convict him of taxconspiracy. We find no error and affirm. I. Relevant Facts We have described the procedural background of this casebefore, see United States v. Morris, 99 F.3d 476, 478 (1st Cir. 1996), and present only a review of the relevant facts here.  In the tax conspiracy trial, the government introducedevidence that Smith paid no taxes from 1986 through April 1994, theperiod charged in the indictment. The government's theory was thatduring this period Smith derived substantial income fromdistributing marijuana and had a tacit agreement with the othersinvolved in the drug distribution activity not to report thisincome to the IRS. To prove its theory, the government reliedheavily on evidence of Smith's participation in the drugtrafficking. Much of this evidence duplicated that introduced inthe drug conspiracy trial. In addition, a number of witnesses whodid not testify in the earlier trial testified to their involvementin the marijuana distribution. They identified Smith as either anactive participant in marijuana trafficking or a recipient of drugproceeds. Other evidence introduced by the government in supportof its case against Smith included: (1) a cash purchase by Smithof a boat and equipment for $17,000; (2) flights in which Smith hadfirst class tickets; (3) a calendar showing periodic payments by acodefendant to Smith of money that witnesses linked directly todrug proceeds; (4) a check signed by Smith for a stock purchase of$10,000; (5) a bank account with an initial deposit in 1990 of$10,000 and another with an initial deposit in 1993 of $30,000; and(6) an IRS agent's testimony that a search of IRS records revealedthat Smith filed no individual tax returns during the chargedperiod.  Smith admitted that he did not file individual tax returnsduring the charged period and that he derived income during thisperiod. He denied, however, receiving money from or havingknowledge of a drug conspiracy. He testified that he generatedincome in legitimate ways, such as renting and buying property,selling antiques, frames and collectibles, and investigatingbuilding lots and delivering money for a codefendant's real estatebusiness. His former wife confirmed that Smith generated cashincome from his lawful businesses, and testified that she had neverseen evidence that he was involved in a drug conspiracy. II. Analysis We begin with Smith's claim that the court erred in refusinghis request for a jury instruction on his acquittal in the earlierdrug conspiracy trial. We review challenges to jury instructionsfor abuse of discretion. United States v. Mitchell, 85 F.3d 800,809 (1st Cir. 1996). "We must look at the instructions in light ofthe evidence and determine whether they fairly and adequatelysubmit the issues in the case to the jury." Id. (citationsomitted). In its instructions to the jury, the district court declinedto inform the jury of Smith's acquittal on drug conspiracy charges,but the court did provide fairly comprehensive instructionsconcerning the drug conspiracy evidence. In its preliminaryinstructions, the court stated, "What I want you to clearlyunderstand is that [the defendant] is not on trial here for havingcommitted any drug offense, any conspiracy or any trafficking orpossession, or anything of that kind." And, in final instructionsafter argument from both parties, the court stated: I want to make it very clear to you that you cannot consider that this defendant is or was in the past guilty of a drug conspiracy offense, that is, the subject of another count of the superseding indictment and about which you have heard some testimony.  You have heard some references in this evidence to these other proceedings against this defendant . . . , and I instruct you again in the strongest terms that you may not consider in any way or indulge in any speculation whatsover about those proceedings in deliberating upon your verdict in this case . . . . Anything that happened with respect to that charge including the disposition is wholly irrelevant to the disposition of the charge of participation by this defendant in a tax conspiracy. . . . . . . . . . . [W]hat you cannot do is to reach or use any conclusion that the defendant is guilty of a drug conspiracy offense in determining whether he is guilty of this tax conspiracy offense. You must treat the defendant as not guilty of any offense of drug conspiracy throughout your deliberations.  . . . .  Accordingly, you may use any evidence that you have heard about drug trafficking in this case as you see fit to find the facts of the case as that evidence is relevant to the issues generated by all the evidence and the instructions in this tax conspiracy case, as long as you do not treat the defendant as guilty of participating in a conspiracy with intent to distribute marijuana.(emphasis added).  Smith objects specifically to the court's statements, "youcannot consider that this Defendant is or was in the past guilty ofa drug conspiracy claim," and "You must treat the Defendant as notguilty of any offense of drug conspiracy throughout yourdeliberations." He argues that this language, combined with theplentiful evidence of his participation in drug trafficking,created a substantial risk that the jury believed he had been foundguilty of drug conspiracy in the earlier trial and that itconvicted him for tax conspiracy on those grounds. Smith maintainsthat this risk could have been avoided by an instruction informingthe jury of his acquittal. In support of this position, Smith relies heavily on Dowlingv. United States, 493 U.S. 342 (1990), in which the district courtallowed the introduction of evidence relating to an earlier trialof the defendant, Reuben Dowling, but also instructed the jury thatthe trial had resulted in an acquittal. Dowling was a bank robberycase in which a witness, Vena Henry, identified Dowling as theperson who burgled her home on a previous occasion. She hadtestified to the same in the trial in which Dowling was acquitted. On appeal, Dowling argued that admission of the burglary testimonytherefore violated his double jeopardy and due process rights. TheSupreme Court disagreed. The Court explained, inter alia, that thecategory of infractions that violate fundamental fairness is verynarrow. It then stated, in language upon which Smith hooks hisargument, "Especially in light of the limiting instructionsprovided by the trial judge, we cannot hold that the introductionof Henry's testimony merits this kind of condemnation." Dowling,493 U.S. at 353. Directly thereafter, the Court reviewed carefullyDowling's arguments, dispelling each in turn; none of thesearguments concerned the acquittal instruction. The Court did notdirectly refer to the acquittal instruction in any portion of itsdue process discussion, and mentioned the limiting instruction onlyin the above quoted sentence.  Smith reads Dowling as holding that an acquittal instructionis essential to avoid fundamental unfairness to a defendant againstwhom evidence of acquitted conduct has been introduced at trial. Dowling, however, cannot bear the weight Smith assigns to it. Weemphasize, as the Seventh Circuit has recently done in UnitedStates v. Tirrell, 120 F.3d 670, 677 (7th Cir. 1997), that theSupreme Court's holding in Dowling does not require that the jurybe told of an acquittal. As the acquittal instruction was givenrather than excluded by the district court, Dowling never addressedthe issue now before us. Moreover, the sentence in Dowling that begins, "Especially inlight of the limiting instructions," does not identify the languageto which "limiting instruction" refers. We know only, from thesection of the opinion laying forth the background of the case,that "[w]hen Henry left the stand, the District Court instructedthe jury that petitioner had been acquitted of robbing Henry, andemphasized the limited purpose for which Henry's testimony wasbeing offered. The court reiterated that admonition in its finalcharge to the jury." Dowling, 493 U.S. at 346. In referring to"limiting instructions," the Court may have meant only theinstructions on the limited purpose of Henry's testimony and notthe portion on acquittal. In any case, the opinion does not saythat without the instructions a due process violation would haveoccurred. The Court simply observes that the limiting instructions-- however they may be defined -- reinforce the conclusion that thedefendant's rights were not violated.  Dowling therefore does not foreclose us from concluding, likethe Seventh Circuit in Tirrell, 120 F.3d 670, and the EighthCircuit in United States v. Riley, 684 F.2d 542, 546 (8th Cir.1982), that an acquittal instruction is not required when evidenceof acquitted conduct is introduced. Stating that it "'afford[ed]substantial deference to a district court's decision to exclude'evidence of an acquittal," the court in Tirrell found no abuse ofdiscretion in the trial court's exclusion of the acquittalinstruction. 120 F.3d at 678 (quoting United States v. Jones, 808F.2d 561, 566-67 (7th Cir. 1986)). The court reasoned that thefact of acquittal was irrelevant to the present charge andcommented that the trial court excluded references to the earliertrial and to defendant's conviction in yet another trial. Id. InRiley too, the court found no abuse, reasoning that defendant'sacquittal on one charge of violating the Mann Act on a date notcharged in the present case was not relevant. Riley, 684 F.2d at546. Turning to the specific language used by the district court ininstructing the jury on how it should weigh the evidence of Smith'sdrug trafficking, we do not agree that the phrases identified bySmith created a misimpression curable only with an acquittalinstruction. The phrase that gives us pause is "you cannotconsider that this Defendant is or was guilty of any offense ofdrug conspiracy throughout your deliberations." Had the court used"whether" in place of "that," or "is not" in place of "was," therewould be no cause whatever for concern. Standing alone, thesentence might be understood to indicate that Smith had been foundguilty of drug conspiracy. But in context, and given the court'swarning to the jury that it "should not indulge in any speculationwhatsoever about . . . [the drug] proceedings," we do not thinksuch an interpretation reasonable. Smith also objects to thecourt's statement that the jury "must treat the defendant as notguilty of any offense of drug conspiracy throughout yourdeliberations," apparently reading "treat" as analogous to"pretend." In fact, "treat" means "to act or behave toward aperson in some specified way" or "to consider or regard in aspecified way." Random House Dictionary 2015 (2d ed. 1983). Simply put, the court emphasized that the jury could not view Smithas guilty of a drug conspiracy, and could not allow speculation onthe outcome of the drug conspiracy trial to affect deliberations inthe tax conspiracy case.  We have no reason to believe that the jury did anything otherthan follow the directives given by the trial court. We "mustpresume that jurors, conscious of the gravity of their task, attendclosely the particular language of the trial court's instructionsin a criminal case, and that they follow those instructions." United States v. Houlihan, 92 F.3d 1271, 1287 (1st Cir. 1996)(citations omitted). We therefore find no abuse. Smith also argues that the court erred in barring him fromcross-examining prosecution witnesses on their knowledge of hisprior acquittal. Determining the scope of cross-examination is amatter within the district court's discretion, and will not bedisturbed absent abuse. See United States v. Morla-Trinidad, 100F.3d 1, 4 (1st Cir. 1996). "When a witness' credibility is inissue, the trial court may impose limits on cross-examination aslong as the court grants the defendant sufficient leeway toestablish 'a reasonably complete picture of the witness' veracity,bias, and motivation.'" United States v. Laboy-Delgado, 84 F.3d22, 28 (1st Cir. 1996) (quoting United States v. Boylan, 898 F.2d230, 254 (1st Cir. 1989)). Smith's impeachment theory was that the witnesses, who werefriends and co-conspirators, testified against him in the taxconspiracy trial after not having done so in the earlier casebecause they knew that he faced a lesser penalty as a result of theacquittal. Assuming that Smith had developed this theory, forwhich he provided no support, cross-examination on acquittal wouldhave opened the discussion to complicated sentencing issues. Also, the jury would have had to sort through the meaning of alegal judgment of acquittal. See United States v. Kerley, 643 F.2d299, 300-01 (5th Cir. 1981) (no abuse of discretion in barringcross-examination on a prior acquittal because an acquittal doesnot demonstrate innocence, and because the probative value of theevidence was outweighed by the danger of unfair prejudice orconfusion). Most importantly, that the witnesses may have beenmore inclined to testify because they believed the remaining riskto Smith to be relatively small is not itself a motive to testify. Rather, the motive was lesser punishment for the witnessesthemselves. As the district court allowed Smith to cross-examinethe witnesses on incentives they received from the government,Smith was able to provide the jury with a reasonably completepicture of their motivation to testify, without unduly complicatingthe issues. The limitation on the cross-examination was thereforea reasonable way of avoiding confusion without prejudicing thedefendant, and was entirely within the court's discretion. Finally, Smith argues that the district court erred inrefusing to instruct the jury that it could not convict based onlyon the failure to file tax returns. A full reading of theinstructions on tax conspiracy and a review of the evidencepresented at trial reveal that the instructions given adequatelyexplained the law. Mitchell, 85 F.3d at 809. The instructionscould not reasonably be construed to permit a finding of guiltbased only on the failure to file. For example, the courtemphasized the conspiracy aspect of the charge, defining conspiracyas "a kind of partnership for criminal purposes in which eachmember becomes the agent of every other member of the conspiracy,"and explaining, "[t]he gist or core of the offense is a combinationor an agreement to disobey or to disregard the law," and "[w]ecannot conspire with ourselves." And, in describing the crime withwhich Smith was charged, the court stated,  [T]he purpose of the statute which makes it a crime to impair, impede or obstruct the lawful functions of, in this case the Internal Revenue Service, or to wilfully agree to do so is to prohibit taxpayers or other persons from hindering the efforts of the Internal Revenue Service to obtain information potentially available to it and to which it is entitled in the performance of governmental functions.Finally, Smith's failure to file by no means made up the bulk ofthe government's evidence. Rather, the government's caseemphasized large cash payments, receipt of money connected to drugdistribution, a fairly expensive lifestyle, and limited or noapparent legitimate income. Given the emphasis on these facts andthe language of the instructions, we do not believe that the juryreasonably could have concluded that it could convict on the basisof failure to file alone.  For the reasons stated above, the judgment of the districtcourt is affirmed.