USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________No. 97-1360 UNITED STATES, Appellee, v. JESUS PAREDES-RODRIGUEZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Coffin and Bownes, Senior Circuit Judges. _____________________ Stewart T. Graham, Jr., by appointment of the Court, with whomGraham & Graham was on brief, for appellant. Ariane D. Vuono, Assistant United States Attorney, with whomDonald K. Stern, United States Attorney, was on brief, forappellee. ____________________   November 6, 1998 ____________________ TORRUELLA, Chief Judge. Jes£s Paredes-Rodr¡guez wasconvicted on charges that he conspired to possess cocaine withintent to distribute, and that he carried a firearm in connectionwith drug trafficking. He was sentenced to 121 months in prisonand five years of supervised release. He now appeals hisconviction, claiming that the jury instructions were misleading,that the indictment was constructively amended by evidence thatalso constituted a prejudicial variance from the conduct charged inthe indictment, and that two police officers were erroneouslypermitted to testify. We affirm his conviction.I. Background On an appeal from a criminal conviction, we view thefacts in the light most favorable to the verdict. See UnitedStates v. Shea, 150 F.3d 44, 46 (1st Cir. 1998). On the evening ofNovember 15, 1994, defendant-appellant Jes£s Paredes-Rodr¡guez wasdriving a car down Merwin Street in Springfield, Massachusetts. Hewas accompanied by Carlos Antigua-Herrera, who was sitting on thefront passenger seat. The car was stopped by state law enforcementofficers assigned to the U.S. Drug Enforcement Agency's WesternMassachusetts Task Force, and both driver and passenger werearrested. During the arrest, Paredes attempted to draw a loaded.38 caliber semi-automatic pistol from his pockets, but wasforcibly restrained from doing so. The officers searched the car,and found 119 grams of crack cocaine under the passenger's seat. The arrest was not random. An undercover state policeofficer, Trooper Juan Col¢n, had negotiated for delivery of cocaineon three previous occasions with the main target of theinvestigation, a certain Jos Reyes, also known as Rafi. OnOctober 12, October 18, and November 2, 1994, Rafi delivered crackcocaine to Col¢n at the same location on Merwin Street whereParedes was later arrested. During the first transaction, onOctober 12, Rafi brought the crack by himself and then sold it toCol¢n. On October 18, Rafi arrived alone without the crack, but afew moments later, an individual known as Flaco arrived carryingthe cocaine that Rafi then sold to Col¢n. On November 2, Rafiagain arrived alone and without the cocaine, entered Col¢n's car,and sat down on the front passenger seat. Soon afterwards, theappellant in this case, Paredes, walked by and handed Rafi throughthe car's open window a one-ounce package of crack cocaine thatRafi then sold to Col¢n for $750. Paredes' arrest followed the fourth transaction betweenRafi and Col¢n. On November 14, Rafi agreed to sell Col¢n fourounces of crack cocaine for $3,000. The following day, Rafi toldCol¢n that at approximately 7:15 p.m., two people in a blackOldsmobile would arrive at the same location on Merwin street todeliver the crack. It was precisely 7:15 p.m. when Paredes andAntigua arrived at the designated location in their car, carrying119 grams (approximately 4.2 ounces) of crack cocaine. After his arrest, Paredes waived his Miranda rights, seeMiranda v. Arizona, 384 U.S. 436 (1966), admitted that he wasdelivering cocaine, and then led the arresting officers to thebuilding where Rafi had given him the crack cocaine. However,Paredes subsequently retracted his confession and denied havingtaken part in or even having had knowledge of the drug transaction. He explained that he showed the police where Rafi lived merelybecause he was trying to be helpful. He also simultaneouslyasserted, inconsistently, that he had no knowledge of the cocainethat was found in his car, and that the cocaine belonged to Rafi. Paredes further stated that Rafi had given him the gun, and toldhim to deliver the gun and the car to a friend who would be waitingfor him on Merwin Street. He admitted, however, that he hadoriginally told the police that he found the gun under some leaves. Paredes' trial before the U.S. District Court for theDistrict of Massachusetts began on November 4, 1996, and continueduntil November 12. On that date, the jury returned a verdictfinding Paredes guilty on all three counts of the indictment. OnFebruary 24, 1997, Paredes was sentenced as described above. Judgment was entered on February 25, and Paredes filed a notice ofappeal on April 19, 1997.II. Analysis A. Jury Instructions If objections to the jury instructions have been properlypreserved, we review the trial judge's choice of wording in theinstructions only for abuse of discretion. See United States v.Smith, 145 F.3d 458, 460 (1st Cir. 1998). In order to determinewhether or not the court abused its discretion, we first "'mustlook at the instructions in light of the evidence and determinewhether they fairly and adequately submit the issues in the case tothe jury.'" Id. (quoting United States v. Mitchell, 85 F.3d 800,809 (1st Cir. 1996)). Even if we find the instructions erroneous,any such errors that are not of constitutional magnitude arereviewed for harmlessness. See Fed. R. Crim. P. 52(a); Koonce v.Pepe, 99 F.3d 469, 473 (1st Cir. 1996). Pursuant to harmlesserror review, "[t]he only question for us is whether the ailinginstruction by itself so infected the entire trial that theresulting conviction violates due process." Id. (quoting Estellev. McGuire, 502 U.S. 62, 72 (1991)). Accordingly, "[w]e mustaddress the instruction 'in the context of the instructions as awhole and the trial record,' and 'inquire whether there is areasonable likelihood that the jury has applied the challengedinstruction in a way that violates the [constitutional right to dueprocess.]'" Koonce, 99 F.3d at 473 (quoting Estelle, 502 U.S. at72) (other citations omitted). As noted earlier, Paredes was indicted on three counts:conspiracy to possess cocaine with intent to distribute, possessionof cocaine with intent to distribute, and carrying a firearm inconnection with a drug-trafficking crime. Although he acknowledgesthat there was other evidence that could support his conviction onthe conspiracy count, Paredes contends that the possession countwas the cornerstone of the indictment because evidence that he wasin possession of the cocaine was the strongest evidence for aconviction on the conspiracy and weapons counts.  Paredes claims that, since the cocaine was found in aplastic bag beneath a towel underneath the front passenger seat,some distance from the reach of his outstretched hand, he could notbe said to be in actual possession of the cocaine. In order toconvict him on the possession count, he claims, the jury had tofind that he was in constructive possession of the cocaine. However, Paredes objects to the court's wording of the instructionon constructive possession, specifically challenging the omission of any explicit mention of an intent requirement. He cites therelevant portion of the court's instructions: "If an individualhas the ability to exercise substantial control over an object thathe does not have in his physical custody, then he is in possessionof that item." He further contends that the subsequent instructionthat possession must be knowing in order to be criminal does notcure the effect of the omission of an intent requirement, becauseit allegedly permits conviction of a person who knows that an itemin proximity to him contains cocaine, even though that person doesnot intend to exercise control over the item.  Assuming for the sake of argument that Paredes is correctthat the evidence did not permit a finding that he was in actualpossession of the cocaine, the first question before us is whetherthe district court's instructions to the jury, taken as a whole,correctly conveyed the law as to constructive possession. Paredesis correct in asserting that intent is an element of constructivepossession, which "exists when a person 'knowingly has the powerand intention at a given time to exercise dominion and control overan object, either directly or through others.'" United States v.Torres-Maldonado, 14 F.3d 95, 102 (1st Cir. 1994) (quoting UnitedStates v. Garc¡a, 983 F.2d 1160, 1164 (1st Cir. 1993)). Uponexamining the instructions as a whole, however, we find that,notwithstanding the absence of a explicit mention of an intentrequirement, the same is implicit in the instructions.  Although the omission of an explicit reference to intentis a less than ideal way of explaining constructive possession toa jury, the other instructions given by the court helpedsubstantially to prevent the prejudice adverted to by Paredes. Forexample, the court also instructed: The possession of a controlled substance cannot be found solely on the basis that the defendant was near or close to the controlled substance. Nor can it be found simply because the defendant was present at a scene where controlled substances were involved, or solely because the defendant associated with a person who controlled the substance where it was found.This instruction, in combination with certain illustrative examplesof constructive possession given by the court and subsequentinstructions on the intent-to-distribute aspect of the crimecharged, effectively conveyed the notion that the jury had to findthat Paredes' possession of the cocaine was knowing andintentional. As a prior panel of this court stated,  [the appellant's argument] ignores the nature of the crime with which he was charged. In directing his entire argument at alleged error in the definition of 'possession,' the defendant forgets that he was charged not with simple possession, but possession with intent to distribute. . . . [His] argument is that the jury found he possessed [certain containers] without knowing they contained cocaine, but went on to find that he intended to distribute the cocaine that was in them.  No reasonable jury could make such a finding.United States v. Hallock, 941 F.2d 36, 43 (1st Cir. 1991). Similarly, in the case before us, it simply makes no sense toassert that the same jury that found that Paredes intended todistribute the cocaine could have simultaneously found that he didnot intend to possess it. B. The Indictment Paredes raises two separate but related claims regardingthe indictment. One is his claim that the charges wereconstructively and improperly amended by the admission of evidencethat he delivered cocaine to Rafi on November 2, because thatevidence allowed the jury to convict him of a conspiracy that wasnot charged in the indictment. The other is his argument thatthere was a fatal variance between the indictment and the proofoffered by the government at trial. Reviewing both contentions forplain error, we find them without merit. When an amendment of the indictment occurs in the middleof trial, it is considered per se prejudicial for a number ofreasons: "to preserve the right of the person accused of aninfamous crime to have a grand jury vote on the indictment, toprevent reprosecution for the same offense, and to protect theright of the accused to be informed of all charges," so as to beable to adequately prepare his defense. United States v. Vavlitis,9 F.3d 206, 210 (1st Cir. 1993). A constructive amendment of theindictment "occurs when the charging terms of the indictment arealtered, . . . in effect, by prosecution or court after the grandjury has last passed upon them." United States v. Dunn, 758 F.2d30, 35 (1st Cir. 1985) (quoting Gaither v. United States, 413 F.2d1061, 1071-72 (D.C. Cir. 1969)); see also Vavlitis, 9 F.3d at 210. For example, an indictment is constructively amended by "a juryinstruction which modifies the offense charged in the indictment,. . . or the admission of evidence of an offense not charged by thegrand jury." Dunn, 758 F.2d at 35.  Notwithstanding Paredes' contentions, the admission ofevidence of the November 2 delivery did not constructively amendthe indictment. The conspiracy count charged Paredes withparticipating in a conspiracy to possess cocaine with intent todistribute "on or around November 15, 1995." During trial, thegovernment introduced evidence that Col¢n purchased cocaine fromRafi on three occasions prior to the November 15 transaction, andthat Paredes acted as Rafi's courier on one of those occasions. The problem with Paredes' argument is that it is based ona misconception of the scope of the conspiracy charged in theindictment. He does not question that the indictment charged himwith conspiring with Rafi and others to possess and sell cocaine. He does argue, however, that because the indictment refers to aconspiracy "on or about November 15," the conspiracy charge isnecessarily limited to the events that occurred on November 15, andtherefore, that the evidence as to the other transactions isevidence of other, uncharged conspiracies. Unfortunately for hisargument, this circuit has previously held that "the setting forth,in approximate form, of [a] date on in the indictment does notpreclude the admission of evidence relating to events whichoccurred earlier." United States v. Fisher, 3 F.3d 456, 461 n.12(1st Cir. 1993); see also United States v. Bello-Prez, 977 F.2d664, 669 n.4 (1st Cir. 1992). The evidence as to the earliertransactions is certainly relevant to the November 15 transaction,because it provides an explanation of his presence on Merwin Streeton the day of his arrest. Furthermore, any potential prejudice wasprevented by the district court's careful instruction to the jury -which we have no reason to fear was ignored by the jury - that thedefendant was on trial only for the events of November 15, and noneother. The argument with regard to the alleged variance in proofis quite similar to the constructive amendment argument. "Avariance occurs when the proof differs from the allegations in theindictment." Vavlitis, 9 F.3d at 210. However, "[a] variance ismaterial and reversible only if it has affected the defendant'ssubstantial rights . . . to be informed of the charges and toprevent a second prosecution for the same offense." Id. Paredesclaims that the evidence introduced at trial regarding theNovember 2 transaction created a prejudicial variance between theproof and the indictment. As noted above, however, the referenceto approximate dates in an indictment is not binding and thus thescope of the indictment may cover prior events. See Fisher, 3 F.3dat 461 n.12. Accordingly, the evidence as to the priortransactions between Rafi and Col¢n, and Paredes' participation inone of those transactions is not materially different from theconduct charged in the indictment. Moreover, even assuming that the evidence of priortransactions was sufficiently different from the acts charged inthe indictment to constitute a variance, the evidence did notprejudice Paredes' substantial rights. He was certainly able toprepare an adequate defense, since he was on notice that thegovernment would seek to introduce such evidence. Additionally,any danger that Paredes could be convicted on the basis of theevidence of the November 2 transaction was sufficiently mitigatedby the court's instruction to the jury that the evidence as to theearlier transactions should be considered only as evidence thatmight be probative of his participation in a conspiracy onNovember 15, and not as proof of his participation in an earlierconspiracy. C. Evidentiary Rulings Paredes objects to the trial court's admission of Col¢n'stestimony as to statements made by Rafi in his presence duringtheir negotiations for the November 15 transaction. He alsoobjects to the admission of the testimony of the law enforcementofficer in charge of the investigation as to what was said to himby two other officers. Neither objection is well-founded. Under Fed. R. Evid. 801(d)(2)(E), a defendant'scoconspirator's statements are admissible if the prosecution provesto the trial judge by a preponderance of the evidence that therewas a conspiracy, that the defendant was part of the conspiracy,and that the statements were made by the coconspirator during thecourse and in furtherance of the conspiracy. See Bourjaily v.United States, 483 U.S. 171, 176 (1987); see also United States v.Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977) (explaining thatunder Fed. R. Evid. 104(a), trial judge rather than jury has dutyto hear evidence and determine admissibility of coconspiratorstatements). Moreover, after some debate among the circuit courtsof appeals, see, e.g., Petrozziello, 548 F.2d at 23 n.2, theSupreme Court declared that trial courts may consider any non-privileged evidence, regardless of its admissibility, in makingRule 801(d)(2)(E) determinations, see Bourjaily, 483 U.S. at 178-79(harmonizing Fed. R. Evid. 104(a) procedures and Rule 801(d)(2)(E)determinations). Thus, for example, in determining whether or not topermit the introduction of evidence as to the statements of analleged coconspirator, the trial judge may consider hearsayevidence, including the very coconspirator statement whoseintroduction is being sought. As the Court explained, "there islittle doubt that a coconspirator's statements could themselves beprobative of the existence of a conspiracy and the participation ofboth the defendant and the declarant in the conspiracy." Id. at180. In the case before us, the district court conducted aPetrozziello hearing during which he reviewed the availableevidence, including but not limited to Col¢n's testimony as to whatRafi had stated. The court concluded that the government hadestablished by a preponderance of the evidence that there had beena conspiracy, that Paredes and Rafi had been part of theconspiracy, and that Rafi's statements were made during and infurtherance of the conspiracy. In making its determination, thecourt emphasized Col¢n's testimony that Paredes handed Rafi thecrack cocaine during the November 2 transaction, and the fact thatParedes was arrested while in possession of four ounces of crackcocaine at the time and place Rafi had said his courier woulddeliver four ounces of crack cocaine. Viewing this evidence in thelight most favorable to the guilty verdict, we discern no error inthe district court's determination. Paredes' response is to raise, once more, the argumentthat the conspiracy charged did not include the prior transactions,but only the November 15 transaction, and thus, that Rafi'sstatements were made in the course of a prior conspiracy, and notthe one at issue. This is an argument we have considered andrejected above, and thus we merely repeat that the scope of theconspiracy charged in the indictment is broad enough to cover theearlier transactions between Rafi and Col¢n. Paredes also argues that the court erred in deciding topermit Sgt. Neil Maloney, the agent in charge of the investigation,to testify as to what other officers told him during the course ofthe investigation. Maloney testified that officers under hiscommand told him that they saw someone leave Paredes' residence onTilton Street in a brown Toyota, proceed to Belmont Street, whereboth driver and passenger exchanged the Toyota for a dark Buick,and then proceed Merwin Street driving the same Buick. Paredesobjected to this testimony on hearsay grounds, but the judgeoverruled the objection, stating that he would allow the testimonyfor the limited purpose of explaining how the surveillance reportsprompted Maloney to take subsequent action, rather than toestablish the truth of the reports. Given that the Federal Rulesof Evidence define hearsay as "a statement, other than one made bythe declarant while testifying at the trial or hearing, offered inevidence to prove the truth of the matter asserted," Fed. R. Evid.801(c), the court's ruling was not an abuse of discretion. Mostimportantly, any error would have been harmless, because Maloney'stestimony as to the car switch was of only tangential importance tothe ultimate issue of whether Paredes committed the acts he wascharged with. Finally, Paredes objects to the district court's decisionto permit Maloney to testify as to Col¢n's out-of-courtidentification of Paredes, as well as the comments that Col¢n madeat the time. Based on a photo taken of Paredes after his arrest onNovember 15, Col¢n identified him as the courier who delivered thecrack during the November 2 transaction. Col¢n had testifiedearlier during the trial as to the same incident, and, according toParedes, Col¢n's identification at trial was very shaky. Paredesthus claims that he was prejudiced by the admission of Maloney'stestimony because its effect was to bolster Col¢n's identification. Rule 801(d)(1)(C), however, declares that "[a] statement is nothearsay if . . . [t]he declarant testifies at the trial or hearingand is subject to cross-examination concerning the statement, andthe statement is . . . one of identification of a person made afterperceiving the person." Cf. United States v. Owens, 484 U.S. 554,564 (1988) (Rule 801(d)(1)(C) exception applicable to evidence ofwitness's prior identification of defendant, even though by thetime of trial, witness was unable to remember identification). Indeed, "[t]he premise for Rule 801(d)(1)(C) was that, givenadequate safeguards against suggestiveness, out-of-courtidentifications were generally preferable to courtroomidentifications," because of the problem of fading memories. Id.at 563. Thus, even assuming that Col¢n's identification of Paredesat trial was less emphatic than his earlier identification in thepresence of Maloney, this would merely confirm the validity of thepremise underlying Rule 801(d)(1)(C).III. Conclusion For the reasons discussed above, we affirm theappellant's conviction.