**UNITED STATES of America, Appellee,**

v.

**Stuart L. SMITH, Defendant, Appellant.**

**No. 97–1927.**

United States Court of Appeals,
First Circuit.

Heard March 2, 1998.

Decided June 10, 1998.

Theodore A. Barone with whom William F. Sullivan was on brief for appellant.

F. Mark Terison, Assistant U.S. Attorney, with whom Jay P. McCloskey, United States Attorney, and Jonathan A. Toof, Assistant U.S. Attorney, were on brief for appellee.

Before LYNCH, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

A three-count indictment charged Stuart L. Smith with drug conspiracy, criminal forfeiture on the drug count, and tax conspiracy. After severance of the tax conspiracy charge, Smith was acquitted of drug conspiracy and therefore forfeited no property. Smith was then tried for tax conspiracy, i.e., conspiracy to defraud the Internal Revenue Service (IRS). Evidence of drug trafficking was admitted in the tax conspiracy trial to demonstrate receipt of revenue that was not reported to the IRS. Smith was convicted and now appeals. He argues that the district court erred in refusing to inform the jury of his acquittal on the drug conspiracy charge and in barring his cross-examination of prosecution witnesses on their knowledge of his acquittal. Finally, Smith contends that the district court should have instructed the jury that failure to file tax returns was an insuffi-

cient basis upon which to convict him of tax conspiracy. We find no error and affirm.

## I. *Relevant Facts*

We have described the procedural background of this case before, *see United States v. Morris,* 99 F.3d 476, 478 (1st Cir.1996), and present only a review of the relevant facts here.

In the tax conspiracy trial, the government introduced evidence that Smith paid no taxes from 1986 through April 1994, the period charged in the indictment. The government's theory was that during this period Smith derived substantial income from distributing marijuana and had a tacit agreement with the others involved in the drug distribution activity not to report this income to the IRS. To prove its theory, the government relied heavily on evidence of Smith's participation in the drug trafficking. Much of this evidence duplicated that introduced in the drug conspiracy trial. In addition, a number of witnesses who did not testify in the earlier trial testified to their involvement in the marijuana distribution. They identified Smith as either an active participant in marijuana trafficking or a recipient of drug proceeds. Other evidence introduced by the government in support of its case against Smith included: (1) a cash purchase by Smith of a boat and equipment for $17,000; (2) flights in which Smith had first class tickets; (3) a calendar showing periodic payments by a codefendant to Smith of money that witnesses linked directly to drug proceeds; (4) a check signed by Smith for a stock purchase of $10,000; (5) a bank account with an initial deposit in 1990 of $10,000 and another with an initial deposit in 1993 of $30,000; and (6) an IRS agent's testimony that a search of IRS records revealed that Smith filed no individual tax returns during the charged period.

Smith admitted that he did not file individual tax returns during the charged period and that he derived income during this period. He denied, however, receiving money from or having knowledge of a drug conspiracy. He testified that he generated income in legitimate ways, such as renting and buying property, selling antiques, frames and collectibles, and investigating building lots and delivering money for a codefendant's real estate business. His former wife confirmed that Smith generated cash income from his lawful businesses, and testified that she had never seen evidence that he was involved in a drug conspiracy.

## II. *Analysis*

We begin with Smith's claim that the court erred in refusing his request for a jury instruction on his acquittal in the earlier drug conspiracy trial. We review challenges to jury instructions for abuse of discretion. *United States v. Mitchell,* 85 F.3d 800, 809 (1st Cir.1996). "We must look at the instructions in light of the evidence and determine whether they fairly and adequately submit the issues in the case to the jury." *Id.* (citations omitted).

In its instructions to the jury, the district court declined to inform the jury of Smith's acquittal on drug conspiracy charges, but the court did provide fairly comprehensive instructions concerning the drug conspiracy evidence. In its preliminary instructions, the court stated, "What I want you to clearly understand is that [the defendant] is not on trial here for having committed any drug offense, any conspiracy or any trafficking or possession, or anything of that kind." And, in final instructions after argument from both parties, the court stated:

I want to make it very clear to you that *you cannot consider that this defendant is or was in the past guilty of a drug conspiracy offense,* that is, the subject of another count of the superseding indictment and about which you have heard some testimony.

You have heard some references in this evidence to these other proceedings against this defendant ..., and I instruct you again in the strongest terms that you may not consider in any way or indulge in any speculation whatsover about those proceedings in deliberating upon your verdict in this case.... Anything that happened with respect to that charge including the disposition is wholly irrelevant to the disposition of the charge of participation by this defendant in a tax conspiracy....

. . . .

. . . [W]hat you cannot do is to reach or use any conclusion that the defendant is guilty of a drug conspiracy offense in determining whether he is guilty of this tax conspiracy offense. *You must treat the defendant as not guilty of any offense of drug conspiracy throughout your deliberations.*

. . . .

Accordingly, you may use any evidence that you have heard about drug trafficking in this case as you see fit to find the facts of the case as that evidence is relevant to the issues generated by all the evidence and the instructions in this tax conspiracy case, as long as you do not treat the defendant as guilty of participating in a conspiracy with intent to distribute marijuana.

(emphasis added).

Smith objects specifically to the court's statements, "you cannot consider that this Defendant is or was in the past guilty of a drug conspiracy claim," and "You must treat the Defendant as not guilty of any offense of drug conspiracy throughout your deliberations." He argues that this language, combined with the plentiful evidence of his participation in drug trafficking, created a substantial risk that the jury believed he had been found guilty of drug conspiracy in the earlier trial and that it convicted him for tax conspiracy on those grounds. Smith maintains that this risk could have been avoided by an instruction informing the jury of his acquittal.

In support of this position, Smith relies heavily on *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), in which the district court allowed the introduction of evidence relating to an earlier trial of the defendant, Reuben Dowling, but also instructed the jury that the trial had resulted in an acquittal. *Dowling* was a bank robbery case in which a witness, Vena Henry, identified Dowling as the person who burgled her home on a previous occasion. She had testified to the same in the trial in which Dowling was acquitted. On appeal, Dowling argued that admission of the burglary testimony therefore violated his double jeopardy and due process rights. The Supreme Court disagreed. The Court explained, *inter alia*, that the category of infractions that violate fundamental fairness is very narrow. It then stated, in language upon which Smith hooks his argument, "Especially in light of the limiting instructions provided by the trial judge, we cannot hold that the introduction of Henry's testimony merits this kind of condemnation." *Dowling*, 493 U.S. at 353, 110 S.Ct. 668. Directly thereafter, the Court reviewed carefully Dowling's arguments, dispelling each in turn; none of these arguments concerned the acquittal instruction. The Court did not directly refer to the acquittal instruction in any portion of its due process discussion, and mentioned the limiting instruction only in the above quoted sentence.

Smith reads *Dowling* as holding that an acquittal instruction is essential to avoid fundamental unfairness to a defendant against whom evidence of acquitted conduct has been introduced at trial. *Dowling*, however, cannot bear the weight Smith assigns to it. We emphasize, as the Seventh Circuit has recently done in *United States v. Tirrell*, 120 F.3d 670, 677 (7th Cir.1997), that the Supreme Court's holding in *Dowling* does not require that the jury be told of an acquittal. As the acquittal instruction was given rather than excluded by the district court, *Dowling* never addressed the issue now before us.

Moreover, the sentence in *Dowling* that begins, "Especially in light of the limiting instructions," does not identify the language to which "limiting instruction" refers. We know only, from the section of the opinion laying forth the background of the case, that "[w]hen Henry left the stand, the District Court instructed the jury that petitioner had been acquitted of robbing Henry, and emphasized the limited purpose for which Henry's testimony was being offered. The court reiterated that admonition in its final charge to the jury." *Dowling*, 493 U.S. at 346, 110 S.Ct. 668. In referring to "limiting instructions," the Court may have meant only the instructions on the limited purpose of Henry's testimony and not the portion on acquittal. In any case, the opinion does not say that without the instructions a due process violation would have occurred. The Court

simply observes that the limiting instructions—however they may be defined—reinforce the conclusion that the defendant's rights were not violated.

*Dowling* therefore does not foreclose us from concluding, like the Seventh Circuit in *Tirrell,* 120 F.3d 670, and the Eighth Circuit in *United States v. Riley,* 684 F.2d 542, 546 (8th Cir.1982), that an acquittal instruction is not required when evidence of acquitted conduct is introduced. Stating that it " 'afford[ed] substantial deference to a district court's decision to exclude' evidence of an acquittal," the court in *Tirrell* found no abuse of discretion in the trial court's exclusion of the acquittal instruction. 120 F.3d at 678 (quoting *United States v. Jones,* 808 F.2d 561, 566–67 (7th Cir.1986)). The court reasoned that the fact of acquittal was irrelevant to the present charge and commented that the trial court excluded references to the earlier trial and to defendant's conviction in yet another trial. *Id.* In *Riley* too, the court found no abuse, reasoning that defendant's acquittal on one charge of violating the Mann Act on a date not charged in the present case was not relevant. *Riley,* 684 F.2d at 546.

■ Turning to the specific language used by the district court in instructing the jury on how it should weigh the evidence of Smith's drug trafficking, we do not agree that the phrases identified by Smith created a misimpression curable only with an acquittal instruction. The phrase that gives us pause is "you cannot consider that this Defendant is or was guilty of any offense of drug conspiracy throughout your deliberations." Had the court used "whether" in place of "that," or "is not" in place of "was," there would be no cause whatever for concern. Standing alone, the sentence might be understood to indicate that Smith had been found guilty of drug conspiracy. But in context, and given the court's warning to the jury that it "should not indulge in any speculation whatsoever about ... [the drug] proceedings," we do not think such an interpretation reasonable. Smith also objects to the court's statement that the jury "must treat the defendant as not guilty of any offense of drug conspiracy throughout your delibera-

tions," apparently reading "treat" as analogous to "pretend." In fact, "treat" means "to act or behave toward a person in some specified way" or "to consider or regard in a specified way." Random House Dictionary 2015 (2d ed.1983). Simply put, the court emphasized that the jury could not view Smith as guilty of a drug conspiracy, and could not allow speculation on the outcome of the drug conspiracy trial to affect deliberations in the tax conspiracy case.

We have no reason to believe that the jury did anything other than follow the directives given by the trial court. We "must presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case, and that they follow those instructions." *United States v. Houlihan,* 92 F.3d 1271, 1287 (1st Cir.1996) (citations omitted). We therefore find no abuse.

■ Smith also argues that the court erred in barring him from cross-examining prosecution witnesses on their knowledge of his prior acquittal. Determining the scope of cross-examination is a matter within the district court's discretion, and will not be disturbed absent abuse. *See United States v. Morla–Trinidad,* 100 F.3d 1, 4 (1st Cir. 1996). "When a witness' credibility is in issue, the trial court may impose limits on cross-examination as long as the court grants the defendant sufficient leeway to establish 'a reasonably complete picture of the witness' veracity, bias, and motivation.' " *United States v. Laboy–Delgado,* 84 F.3d 22, 28 (1st Cir.1996) (quoting *United States v. Boylan,* 898 F.2d 230, 254 (1st Cir.1990)).

■ Smith's impeachment theory was that the witnesses, who were friends and co-conspirators, testified against him in the tax conspiracy trial after not having done so in the earlier case because they knew that he faced a lesser penalty as a result of the acquittal. Assuming that Smith had developed this theory, for which he provided no support, cross-examination on acquittal would have opened the discussion to complicated sentencing issues.[1] Also, the jury

---

1. For instance, had Smith asked the witnesses if    the acquittal influenced their willingness to testi-

would have had to sort through the meaning of a legal judgment of acquittal. *See United States v. Kerley,* 643 F.2d 299, 300–01 (5th Cir.1981) (no abuse of discretion in barring cross-examination on a prior acquittal because an acquittal does not demonstrate innocence, and because the probative value of the evidence was outweighed by the danger of unfair prejudice or confusion). Most importantly, that the witnesses may have been more inclined to testify because they believed the remaining risk to Smith to be relatively small is not itself a motive to testify. Rather, the motive was lesser punishment for the witnesses themselves. As the district court allowed Smith to cross-examine the witnesses on incentives they received from the government, Smith was able to provide the jury with a reasonably complete picture of their motivation to testify, without unduly complicating the issues. The limitation on the cross-examination was therefore a reasonable way of avoiding confusion without prejudicing the defendant, and was entirely within the court's discretion.

■ Finally, Smith argues that the district court erred in refusing to instruct the jury that it could not convict based only on the failure to file tax returns. A full reading of the instructions on tax conspiracy and a review of the evidence presented at trial reveal that the instructions given adequately explained the law. *Mitchell,* 85 F.3d at 809. The instructions could not reasonably be construed to permit a finding of guilt based only on the failure to file. For example, the court emphasized the conspiracy aspect of the charge, defining conspiracy as "a kind of partnership for criminal purposes in which each member becomes the agent of every other member of the conspiracy," and explaining, "[t]he gist or core of the offense is a combination or an agreement to disobey or to disregard the law," and "[w]e cannot conspire with ourselves." And, in describing the crime with which Smith was charged, the court stated,

> [T]he purpose of the statute which makes it a crime to impair, impede or obstruct the lawful functions of, in this case the Inter-

fy, the government could have explored what the witnesses believed would be the consequences to

nal Revenue Service, or to wilfully agree to do so is to prohibit taxpayers or other persons from hindering the efforts of the Internal Revenue Service to obtain information potentially available to it and to which it is entitled in the performance of governmental functions.

Finally, Smith's failure to file by no means made up the bulk of the government's evidence. Rather, the government's case emphasized large cash payments, receipt of money connected to drug distribution, a fairly expensive lifestyle, and limited or no apparent legitimate income. Given the emphasis on these facts and the language of the instructions, we do not believe that the jury reasonably could have concluded that it could convict on the basis of failure to file alone.

For the reasons stated above, the judgment of the district court is *affirmed.*

Smith of a finding of guilty for tax conspiracy with and without a drug conspiracy conviction.