Revised April 8, 1999

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 97-41346

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RENE DE LA ROSA,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

March 24, 1999

Before REYNALDO G. GARZA, POLITZ, and BARKSDALE, Circuit Judges.

POLITZ, Circuit Judge:

This appeal poses the question whether a trial court abused its discretion by refusing to admit evidence or advise the jury of a defendant's prior acquittal on a related charge. Additionally, we are asked to determine whether sufficient evidence supported the conviction. We conclude that neither of the challenged rulings constitutes an abuse of discretion and that the conviction is adequately

supported by the evidence.

## BACKGROUND

Rene De La Rosa was charged with: (1) conspiracy to influence James Almaraz, a petit juror who was serving in the trial of Javier Lopez Cantu, in violation of 18 U.S.C. §§ 2,[1] 371[2] (Count One); (2) aiding and abetting the influencing of Almaraz in violation of 18 U.S.C. §§ 2, 1503[3] (Count Three); and (3) being an accessory after the fact to Cantu, in violation of 18 U.S.C. § 3[4] (Count Five). De La Rosa's co-defendants, Bobby Herrera (Cantu's cousin) and Jennifer Esparza (Herrera's girlfriend) pleaded guilty on related charges. Cantu was ultimately convicted for his involvement in a marihuana smuggling and money laundering operation.

---

[1]18 U.S.C. § 2 provides in pertinent part:
Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. . . .

[2]18 U.S.C. § 371 provides in pertinent part:
If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be [punished]. . . .

[3]18 U.S.C. § 1503 provides in pertinent part:
Whoever corruptly . . . endeavors to influence, intimidate, or impede any grand or petit juror . . . in the discharge of his duty . . . shall be punished. . . .

[4]18 U.S.C. § 3 provides:
Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

The jury acquitted De La Rosa of Count One and deadlocked 11 to 1 in favor of conviction on Counts Three and Five. Prior to the second trial, the government filed a motion in limine seeking to exclude the evidence of acquittal on Count One, the conspiracy charge. Over De La Rosa's objection, the trial court granted the government's motion. At no time during the second trial did the government suggest to the jury that there had been a prior trial or mention any alleged conspiracy.[5]

The following evidence, viewed in the light most favorable to the jury verdict, was introduced at trial.[6] De La Rosa was involved in drug trafficking with Cantu. During Cantu's trial, which he attended with Herrera, De La Rosa recognized one of the jurors -- Almaraz -- as a former high school classmate. Subsequently, Herrera discovered that Esparza was friends with Almaraz's girlfriend, Diana Dorado. Believing that their connections with Almaraz would make him a good candidate for bribery, De La Rosa and Herrera decided to offer

---

[5]During oral argument, De La Rosa's counsel affirmatively represented to the court that the government expressly referred to a conspiracy of which De La Rosa was a part. After some probing by the court, defense counsel equivocated. We have reviewed the record with great care and were unable to find a single instance when the government, in the jury's presence, used the term conspiracy. To the extent defense counsel stated or implied the contrary, and we believe he did both, we are troubled. Counsel, particularly one who represented De La Rosa at trial, should know the record; but if he does not, he should candidly acknowledge such.

[6]**See United States v. Hanson**, 161 F.3d 896 (5th Cir. 1998).

Almaraz $5,000 to $10,000 in exchange for a vote of acquittal in Cantu's trial. Erica Ureste,[7] Dorado's co-worker, offered to speak to Almaraz on Cantu's behalf. Herrera instructed Ureste to relay the bribe to Almaraz and informed De La Rosa of the arrangement; De La Rosa requested that he be kept abreast of the events to follow.

Dorado, at Ureste's request, conveyed the offer of the bribe to Almaraz as they headed toward a café co-owned or co-managed[8] by De La Rosa. At the café, De La Rosa followed Almaraz into a rest room and offered him a bribe (a future favor) to which Almaraz appeared receptive. Then, De La Rosa ordered his waitress to write off Almaraz's tab and advised her that Almaraz's next meal would also be on the house. During the course of the evening, De La Rosa contacted Herrera by phone on several occasions and told Herrera that he had offered a bribe to Almaraz.

The next day Almaraz reported the offer of the bribe to the U.S. Marshal's deputies. Subsequently, De La Rosa was arrested. He waived his **Miranda**[9] rights and told a federal agent several conflicting and false accounts. First, De La Rosa

---

[7]The spelling of this name varies depending on whether one looks to the transcript, the government's brief, or De La Rosa's brief. We adopt the spelling used in the transcript.

[8]It is unclear from the record whether De La Rosa co-owned or co-managed the café.

[9]*See* **Miranda v. Arizona**, 348 U.S. 436 (1966).

4

claimed not to know Almaraz; then he equivocated and admitted to possibly knowing him by sight; finally, he admitted that he recognized Almaraz as a juror serving in Cantu's trial and that he was acquainted with Almaraz. Second, De La Rosa claimed not to have worked at the café on the night Almaraz dined there and denied picking up Almaraz's tab; he now concedes writing off the bill. Third, he denied speaking to Almaraz, but later conceded that they engaged in idle chatter. Finally, De La Rosa claimed that he had only limited contact with Cantu.

De La Rosa was convicted on both counts and was sentenced to serve concurrent terms of 108 months on each count. He now appeals, contending that the trial court committed reversible error by refusing to allow evidence that he was acquitted on the conspiracy count and by failing to instruct the jurors that they should consider the evidence suggesting a conspiracy in light of that acquittal. Further, he contends that the evidence was insufficient to support his conviction as to either count.

**ANALYSIS**

I.    **Standard of Review.**

We review for abuse of discretion a trial court's decision to exclude evidence

and its refusal to give proposed jury instructions.[10] A trial court's failure to deliver a requested jury instruction constitutes reversible error if the instruction: "(1) was substantially correct; (2) was not substantially covered in the charge delivered to the jury; and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense."[11] ~~If, however, the defendant failed properly to preserve his objection to the jury charge, the plain error standard applies.[12]~~ In reviewing a challenge to the sufficiency of the evidence, we must determine whether a rational trier of fact could have found that the evidence, viewed in the light most favorable to the government, established guilt beyond a reasonable doubt.[13]

## II. Evidence of Prior Acquittal.

We have squarely held that, as a general matter, a trial court does not abuse its discretion in excluding evidence of a prior acquittal on a related charge. In

---

[10]**See United States v. Polasek**, 162 F.3d 878 (5th Cir. 1998); **United States v. Jensen**, 42 F.3d 946 (5th Cir. 1994).

[11]**United States v. Duncan**, 919 F.2d 981, 990 (5th Cir. 1990). For purposes of today's decision, we assume that De La Rosa properly preserved his objection to the jury charge.

[12]~~**See United States v. Crow**, 164 F.3d 229 (5th Cir. 1999).~~

[13]**See United States v. Millsaps**, 157 F.3d 989 (5th Cir. 1998).

**United States v. Kerley**,[14] the defendant, an officer in the sheriff's department, repeatedly struck an individual held in custody. A state jury acquitted the defendant on a battery charge, and the defendant attempted to introduce this evidence in a federal trial arising from the same incident. The trial court refused to admit the prior acquittal, and the defendant urged that the exclusion of the evidence required reversal. We pointed out the fallacies behind this argument.

> Although a judgment of acquittal is relevant with respect to the issues of double jeopardy and collateral estoppel, once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence admitted. . . . [E]vidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime.[15]

Furthermore, "'a judgment of acquittal is hearsay'" not otherwise exempt "'from the operation of the hearsay rule.'"[16] And, even if not for these barriers to admissibility, evidence of a prior acquittal will often be excludable under Fed. R. Evid. 403, because its probative value likely will be "substantially outweighed by

---

[14]643 F.2d 299 (5th Cir. Unit B 1981).

[15]**Id.** at 300-01 (internal quotations and citations omitted).

[16]**United States v. Sutton**, 732 F.2d 1483, 1492 (10th Cir. 1984) (quoting **United States v. Viserto**, 596 F.2d 531, 537 (2d Cir. 1979)).

the danger of prejudice, confusion of the issues, or misleading the jury."[17] Other circuits overwhelmingly agree that, for all the reasons enumerated, evidence of prior acquittals are generally inadmissible.[18] There are seven sister circuits that have, in varying contexts, endorsed this view -- the First, Second, Seventh, Eighth, Tenth, Eleventh, and DC Circuits.[19] We are aware of no contrary authority.

De La Rosa has advanced no claim of double jeopardy or collateral estoppel to support admission of his prior acquittal. Nor does he suggest any justification for departing from the norm in his case; the only grounds he offers for admitting evidence of his acquittal are those that are foreclosed by our precedent, supported by the authority from our sister circuits. De La Rosa fails even to acknowledge -- let alone distinguish -- this vast body of authority.[20]

---

[17]Fed. R. Evid. 403; **Kerley**, 643 F.2d at 301.

[18]**See, e.g., United States v. Marrero-Ortiz**, 160 F.3d 768 (1st Cir. 1998); **United States v. Jones**, 808 F.2d 561 (7th Cir. 1986); **Prince v. Lockhart**, 971 F.2d 118 (8th Cir. 1992); **United States v. Irvin**, 787 F.2d 1506 (11th Cir.1986); **United States v. Thomas**, 114 F.3d 228 (D.C. Cir. 1997).

[19]**See**, **supra**, nn. 16 & 18. Recently, we reaffirmed our holding in **Kerley** that "'evidence of a prior acquittal is not relevant because it does not prove innocence. . . .'" **United States v. Posada-Rios**, 158 F.3d 832, 862 n.13 (5th Cir. 1998) (quoting **Kerley**, 643 F.2d at 300-01).

[20]We note that a lawyer is duty bound to apprise the court of binding authority "directly adverse to the position of his client . . . unless his adversary has done so." **Douglass v. Delta Air Lines, Inc.**, 897 F.2d 1336, 1344 n.16 (5th Cir. 1990) (quoting Texas Code of Professional Responsibility, Ethical Consideration 7-23). Zealous representation does not include skirting ethical obligations.

8

## III.  Instruction of Prior Acquittal.

De La Rosa complains of the trial court's failure to instruct the jury of his prior acquittal.  In support of his position he cites to one and only one authority, **Dowling v. United States.**[21]  We agree with our First Circuit colleagues that this case "cannot bear the weight [De La Rosa] assigns to it."[22]  As our colleagues observed in **United States v. Smith**,[23] "**Dowling** does not require that the jury be told of an acquittal."  Indeed, **Dowling** does not even address the issue.[24]

Given the absence of intervening or controlling authority, this panel declines to ignore **Kerley**, and the rulings by our sister circuits, as De La Rosa suggests.  We join with the First, Seventh, and Eighth Circuits in holding that an acquittal instruction is not required merely because evidence of acquitted conduct is introduced.[25]  We entrust that matter, in the first instance, to the sound discretion of the trial court.  In the case at bar, in refusing the charge, we perceive no abuse of discretion by the trial judge.

---

[21] 493 U.S. 342 (1990).

[22] **United States v. Smith**, 145 F.3d 458, 461 (1st Cir. 1998).

[23] **Id.**

[24] **Id.**

[25] **Id.** at 462 (citing **United States v. Tirrell**, 120 F.3d 670 (7th Cir. 1997); **United States v. Riley**, 684 F.2d 542 (8th Cir. 1982)).

## IV. Sufficiency of the Evidence.

We turn now to the last point of contention: De La Rosa's claim that neither Count Three nor Count Five was supported by sufficient evidence.

To show a violation of 18 U.S.C. § 1503 (endeavoring to influence a juror in the discharge of his duty), the government must prove: (1) that a judicial proceeding was pending; (2) that the defendant had knowledge of the judicial proceeding; and (3) that the defendant acted corruptly with the specific intent to influence, obstruct, or impede that proceeding in its due administration of justice.[26] To show a violation of 18 U.S.C. § 2 (aiding and abetting), the government must prove: (1) that the defendant associated with a criminal venture; (2) that he participated in the criminal venture; and (3) that the defendant sought by action to make that venture successful.[27] To show a violation of 18 U.S.C. § 3 (being an accessory after the fact), the government must prove: (1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender.[28]

---

[26]**See United States v. Williams**, 874 F.2d 968 (5th Cir. 1989).

[27]**See United States v. Fierro**, 38 F.3d 761 (5th Cir. 1998).

[28]**See United States v. Triplett**, 922 F.2d 1174 (5th Cir. 1991).

De La Rosa contends that no reasonable juror could have concluded beyond a reasonable doubt that he acted with the requisite intent or that he attempted to influence Almaraz. In so positing, De La Rosa asserts that Almaraz's testimony was incredible; he focuses on unimportant inconsistencies between the account of Almaraz and that of other witnesses with respect to the details surrounding De La Rosa's decision to write off Almaraz's tab. Besides the insignificance of the purported conflicts in testimony, we would not disturb a jury verdict when to do so would require a second-guessing of the jury's assessment of witness credibility. We may declare witness testimony incredible as a matter of law only if it "relate[s] to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature."[29] Otherwise, it is not our role "to weigh the evidence or to determine the credibility of the witnesses."[30] So long as a jury's decision to convict was rational, that decision will stand.[31]

This appeal does not present even a close call on this issue. Almaraz's testimony was not incredible as a matter of law and his testimony, coupled with that of other witnesses produced by the government, was more than sufficient to

[29]**United States v. Bermea**, 30 F.3d 1539, 1552 (5th Cir. 1994).

[30]**United States v. Mathes**, 151 F.3d 251, 252 (5th Cir. 1998).

[31]**See United States v. Miller**, 146 F.3d 274 (5th Cir. 1998).

demonstrate guilt beyond a reasonable doubt on all elements of Counts Three and Five. As recounted in more detail above, the government introduced evidence that: De La Rosa assisted Cantu in his drug business; he attended Cantu's trial; he discussed bribing Almaraz with Herrera and Esparza; he promised Almaraz a future favor in return for a vote of innocence in Cantu's trial; he picked up Almaraz's meal ticket and promised to do so again on Almaraz's next visit; he informed Herrera that he offered Almaraz a bribe; and he gave a law enforcement official several internally inconsistent and false accounts of the facts pertinent to the bribe. Given this evidence, the jury acted within its sworn duty and authority in convicting De La Rosa on Counts Three and Five.

For these reasons, the convictions and sentences of Rene De La Rosa are AFFIRMED.